ADOLPH KUTCHERA, Respondent, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(197 N. W. 140.)

**Independent contractor — defined.**

1. A person who undertakes a specific job of repair work, furnishing his own assistants and doing such work entirely according to his own ideas and plans, and without being subject to the orders of anyone else, as to the details of the work, is an independent contractor and not a servant.

**Railroads — complaint for personal injuries on railway tricycle held sufficient.**

2. A complaint which alleges that a railroad tricycle is a dangerous instrumentality, that the defendant knew that plaintiff did not know such fact, that the defendant authorized the plaintiff to use such tricycle upon defendant's tracks under circumstances making the plaintiff a licensee, but did not warn the plaintiff of the dangerous character of the instrumentality, states a cause of action, altho it is not alleged that the tricycle was defective in any specific particular that would distinguish it from other instrumentalities of the same class.

Opinion filed January 31, 1924.

---

Note.—(1) Who is an independent contractor, see notes in 65 L.R.A. 445; 17 L.R.A.(N.S.) 370; 14 R. C. L. 67; 3 R. C. L. Supp. 163; 4 R. C. L. Supp. 869; 5 R. C. L. Supp. 738.

Master and Servant, 39 C. J. § 1517 p. 1315 n. 1.   Negligence, 29 Cyc. pp. 459 n. 54; 566 n. 85, 86; 573 n. 34.

Appeal from the District Court of Burleigh County, North Dakota, *Jansonius, J.*

Affirmed.

*Newton, Dullam & Young (John E. Palmer* of counsel), for appellant.

One who contracts to do a specific piece of work, furnishing his own assistance and executing the work entirely in accordance with his own ideas, or in accordance with the plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter with respect to the details of the work, is an independent contractor and not a servant.   28 Cyc. 970.

The general rule deducible from the decisions is that where the relation of an independent contractor exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not in itself a nuisance nor will necessarily result in a nuisance if proper precautions are used, and an injury to a third person results, not from the fact that the work is done but from the wrongful or negligent manner of doing it by a contractor or his servants, the contractee is not liable therefor.   26 Cyc. 1084, 1553, subd. C.

"If it is conceded or established that the tort feasor was an independent contractor, the nonliability of the employer becomes an inference in point of law, if the only reasonable deduction from the circumstances as shown is, that the injury in question resulted proximately and solely from the negligent manner in which the stipulated work was performed or from a wrongful act which was neither a necessary nor a probable incident of that work."   65 L.R.A. 641.

One who turns his automobile over to the keeper of a garage to put it into repair for selling, the owner to pay for labor and storage, and the garage to have a commission if he sells the machine for a satisfactory price, is not liable for injury inflicted by the latter while running the machine on the road to test it.   Segler v. Callister (Cal.) 51 L.R.A. (N.S.) 772; Whalen v. Sheehan (Mass.) 18 A.L.R. 972; Press v. Penny (Mo.) 18 A.L.R. 794; Berry v. Director Gen. (Wis.) 180 N.

W. 824; Wingen v. N. St. P. & S. M. R. Co. 42 N. D. 517, 173 N. W. 832; L. & N. R. Co. v. Newland (Ky.) 195 S. W. 415.

*O'Hare & Cox,* for respondent.

"A person authorizing the use by another of a dangerous instrument or article under such circumstances that he knows or should know is likely to produce injury is responsible for the natural and probable consequences of his act or any person injured who is not himself at fault. Such liability does not depend upon privity of contract, but arises from a general duty to the public." Standard Oil Co. v. Wakefield, 102 Va. 824.

"So where property is delivered to a bailee for work to be performed by him upon it, the bailor is liable to the bailee for defects likely to cause injury in the process of performing the work if such defects are not common to the particular species of property and if they are known or should have been known to the bailor and no notice of them is given to the bailee." 6 C. J. 1117.

"And one who places in the hands of or authorizes the use of by another person of a dangerous instrument or article under such circumstances that he has reason to know it is likely to produce injury is liable for natural consequences." 29 Cyc. 460; Palm v. Iverson, 117 Ill. App. 535.

"If an independent contractor going upon the premises of another to perform work under contract with the owner, is injured from defects known or which by fair care ought to be known to the owner and are unknown or which by fair care cannot be known to the contractor, the owner is liable, but under the reverse of these circumstances he is not liable." Sissler v. Rolfe Coal & Coke Co. 51 W. Va. 318, 41 S. E. 216.

JOHNSON, J. This is an appeal from an order of the district court of Burleigh county, overruling a demurrer to the complaint, interposed upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

The plaintiff alleges that the defendant is a corporation operating a system of railroads thru the state of North Dakota and elsewhere; that in October, 1921, the defendant "contracted with and engaged the plaintiff to overhaul and repair the gasolene engine of a certain gasolene propelled vehicle consisting of a small gasolene engine mounted on

a frame and attached to which frame were three flanged wheels, suitable for travel upon common railroad rails, which said vehicle is commonly called a three wheeled gasolene speeder or a speeder." It is further alleged that the machine aforesaid was taken by the plaintiff, pursuant to the agreement aforesaid, to his place of business, for the purpose of overhauling and repairing the engine attached thereto; "that upon examining and overhauling said engine . . . plaintiff determined and found that it would be advisable to try out and test the said engine by operating said speeder upon the railway tracks of the defendant company." It is then alleged that the plaintiff transported the machine to the station of the defendant at Bismarck and asked for and received authority to test the engine by operating the speeder upon its tracks. Then follows this allegation: "That aforesaid three wheeled gasolene speeder was a dangerous and treacherous machine to operate and control when running upon a railroad track, in that said machine, on account of the nature of its construction, did not hold to the track, but in fact was extremely dangerous and treacherous in that its wheels did without warning jump off from the track rails, all of which said facts were known to the defendants and wholly unknown to this plaintiff, and of which facts the defendant negligently, carelessly and wantonly failed and neglected to impart to or give notice of to the plaintiff when authority to operate said speeder upon the tracks of the defendant was given by it to the plaintiff, or any other time." It is then alleged that the plaintiff placed the machine upon the tracks of the defendant and operated the same for a short distance, whereupon the plaintiff turned to come back to Bismarck; that while the plaintiff and his employee were sitting upon said speeder, operating and running the same "in the usual manner upon the tracks of the defendant . . . the wheels of said speeder, without fault on the part of the plaintiff or his employee, did jump off the rails of said track, thereby causing the plaintiff to be thrown from his seat off of said speeder," thereby causing the injuries complained of, which are thereafter described in detail in the complaint. It is then alleged that the injuries were caused without plaintiff's fault and without the fault of his employee but because of "the failure and negligence of the defendant as aforesaid in negligently and carelessly failing . . . to give notice to the plaintiff of the dangerous and treacherous nature of said speeder when operated upon a railroad track."

It was virtually conceded by respondent upon the oral argument that the plaintiff was an independent contractor. The appellant contends that the respondent undertook to do a specific job of repair work, furnishing his own assistants and doing such work entirely according to his own ideas or plans, without being subject to the orders of the appellant in any respect as to the details of the work and that, therefore, the appellant is not liable. It seems to be the general rule that such a person is not a servant, but an independent contractor. Louisville & N. R. Co. v. Newland, 176 Ky. 166, 195 S. W. 415; 26 Cyc. 970, 1084, 1553; 65 L.R.A. 641, note. The respondent, however, contends that the appellant is liable, whether the relation between it and the plaintiff be considered that of an independent contractor, bailee, an employer and employee in the restricted sense, or master and servant. The theory of the respondent is, as we get it from the complaint and from his brief and the argument, that the speeder was a dangerous instrumentality, that it possessed characteristics which became dangerous to persons without knowledge or notice thereof, when the machine was operated upon the railroad tracks, and that the defendant owed a duty to the plaintiff to notify him of these dangerous characteristics; that having failed to do so, the defendant was guilty of negligence, which was the proximate cause of the injuries received. The trial court held that the plaintiff was an independent contractor, but held that the complaint stated a cause of action notwithstanding upon the ground that the machine was dangerous to operate on account of the nature of its construction and that the appellant, although he knew this, failed to notify or warn the respondent thereof.

Plaintiff was not employed to repair the tricycle, but to overhaul the engine. The work of overhauling the engine was apparently completed. The engine was separable from the speeder. If the injury resulted proximately and solely from the negligent manner in which the repair work was done, or from an act which was a necessary incident of the work, the defendant would not be liable. Note in 65 L.R.A. 641. There is nothing in the complaint from which we are justified in drawing this inference, as a matter of law. It is true, the complaint says that plaintiff "determined and found that it would be *advisable* to try out and test the said engine by operating the said speeder upon the railway tracks," but it is not alleged that it was essential to a proper repair job that the tricycle be in fact operated on the tracks. We think

the allegations of the complaint, fairly construed, show that the danger-ous characteristic, to wit, a tendency to jump the track, was due to the construction of the tricycle, entirely apart from the engine with which it was equipped and which plaintiff had fully repaired when the injury occurred. The complaint alleges, in effect, that the three wheeled apparatus in which the engine repaired by the plaintiff was placed, was constructed on such a faulty plan or design that when operated on the railroad tracks, with the engine placed where the plan of the instrumentality required it to be, it would not remain thereon when operated in the usual manner, but had a tendency to jump therefrom without warning.

It should also be noted that the tricycle was an instrumentality in·use only upon railroad tracks; it was not in common use with the qualities and characteristics of which, dangerous or otherwise, the general public would be presumed to be more or less familiar. It cannot be classed with automobiles or other vehicles in general use. Whatever dangerous characteristics this appliance may have possessed would necessarily be known only to the defendant or persons who had had actual contact or experience with it.

As we view this case, it is not material whether the plaintiff be considered an independent contractor, bailee, or otherwise. The decision of the trial court must be sustained, if at all, because the complaint alleges that the instrumentality was dangerous, that its dangerous characteristics were known to the appellant, or, in the exercise of ordinary care, would have been known to it, that they were not known to the respondent and that the appellant, when it authorized the respondent to use the machine upon its tracks, failed to notify the respondent of such dangerous characteristics.

In this, as in other cases of negligence, there lies at the threshold of the investigation the inquiry: What, duty which appellant owed the respondent did it fail to discharge? The cause of action alleged in the complaint is founded upon negligence. The plaintiff must show that the defendant owed him a legal duty which it failed to perform and that, as the proximate result of such failure, he suffered the injury described in the complaint. There is no allegation in the complaint that there was any specific defect in the machine; it is not claimed that any part of it was worn, broken, or in any respect defective; the

contention is simply that the entire machine, though all its parts were sound and in functioning condition, was, nevertheless, a dangerous instrumentality when operated upon railroad tracks. We think it is a sound rule of law, as well as good sense, that he who puts a thing in charge of another, which he knows to be dangerous or to be possessed of characteristics, which, in the ordinary course of events, are likely to produce injury, owes a duty to such person to give reasonable warning or notice of such danger. See Shearm. & Redf. Neg. § 690.

What legal duty, if any, did the defendant owe the plaintiff, under the circumstances? Plaintiff says that the instrumentality turned over to him for use upon defendant's tracks was dangerous, by reason of its construction in this, that it was liable to leave the track without warning, throwing the operator off, and thereby injuring him. He claims, in substance, that while the tricycle was in no specific particular defective, so as to distinguish it from others of its kind, it and the entire class to which it belonged, was dangerous by reason of its construction, when operated on railroad tracks and that plaintiff did not, but defendant did, know this fact. Can we say, as a matter of law, that the defendant, in failing to give plaintiff warning of this fact, used that degree of care which an ordinarily prudent person, in the same situation, would have used? We do not think so. Would an ordinary person, a reasonable man, foresee probable harm to plaintiff from failure to notify him of the dangerous characteristics of the speeder? We think that, upon the face of the complaint, this question must be answered in the affirmative. It is alleged that the speeder possessed the dangerous characteristic of jumping the track without warning; if that be a fact, as we must assume it to be, it was the duty of the defendant to apprise plaintiff thereof when license was given him to operate it upon the railroad tracks. We think a prudent person, in the position of the defendant, possessing knowledge of the dangerous characteristic of this instrumentality, would have foreseen the probability of harm unless plaintiff were advised of the danger.

It is alleged, as an ultimate fact, that the railroad tricycle was an instrumentality dangerous within itself; that the danger claimed did not arise from its misuse. It was being operated. the complaint says, "in the usual manner" and without negligence; that, notwithstanding, and because of inherently dangerous qualities and characteristics, the

tricycle jumped the track and the operator was injured. Had there existed an actual defect in the tricycle, due, not to the character of its construction, but to the fact that a part of the mechanism was broken or out of repair, and had an injury resulted because of such defect, there seems to be no question that defendant would have been liable, had it known of the defect and failed to notify plaintiff thereof. Shearm. & Redf. Neg. 690. Here, however, the allegation, in effect, is that the specific tricycle, as well as all others of its class, is an inherently dangerous instrumentality, by reason of its construction, and possesses dangerous characteristics with a resulting tendency to jump from the track when operated "in the usual manner." We do not think we are justified in saying, as a matter of law, that this tricycle, notwithstanding the allegations of the complaint, was not a dangerous instrumentality, or that the tricycle was not dangerous in itself or liable to cause injury to the operator when operated in the customary manner and for the purpose for which it was designed. See Barmore v. Vicksburg, S. & P. R. Co. 85 Miss. 426, 70 L.R.A. 627, 38 So. 215, 3 Ann. Cas. 594, where, in an action by one injured in a collision with a railroad tricycle upon defendant's tracks, it was held to be a question for the jury whether the tricycle was a dangerous instrumentality within the rule that a master who intrusts the custody and control of a dangerous appliance to a servant cannot avoid responsibility for injuries inflicted by it upon the ground that the servant, in the specific act under consideration, was acting outside the scope of his employment. See also King v. National Oil Co. 81 Mo. App. 155.

Applying the elementary tests of negligence, we believe the complaint states a cause of action. .

Order affirmed, with leave to answer within thirty days from filing of remittitur.

BRONSON, Ch. J., and BIRDZELL, J., and BUTTZ, Dist. J., concur.

Mr. Justice NUESSLE, disqualified, did not participate, Honorable C. W. BUTTZ, Judge of Second Judicial District, sitting in his stead.

CHRISTIANSON, J. (dissenting). The complaint in this case alleges that the plaintiff was engaged by the defendant to over-haul and repair

the engine of a so-called speeder. Presumptively the plaintiff was qualified to do such work; and, as stated in the majority opinion, it is virtually conceded on the part of the plaintiff that he was an independent contractor, and that the relation of master and servant did not exist between plaintiff and defendant. It is alleged that "upon examining and overhauling said engine . . . plaintiff determined and found it would be advisable to try out and test the said engine by operating said speeder upon the railway tracks of the defendant company;" and that thereupon the plaintiff took the speeder to the station of the defendant at Bismarck, and asked for and received authority from the defendant to test the "engine by operating said speeder upon the tracks of the defendant company near the city of Bismarck." The basis of the alleged charge of negligence arises at this point.

It is alleged: "That aforesaid three-wheeled gasoline speeder was a dangerous and treacherous machine to operate and control when running upon a railroad track in that said machine, on account of the nature of its construction, did not hold to the track, but, in fact, was extremely dangerous and treacherous in that its wheels would, without warning, jump off from the track rails, all of which said facts were known to the defendants and wholly unknown to this plaintiff, and of which facts the defendant negligently, carelessly and wantonly failed and neglected to impart to or give notice of to the plaintiff when authority to operate said speeder upon the tracks of the defendant was given by it to the plaintiff, or at any other time."

It is further alleged that the speeder, while being operated by the plaintiff in the usual manner, "did jump off the rails;" that the plaintiff sustained injuries as a result thereof; and that all such "injuries and bruises were caused, without fault on the part of the plaintiff or his employee, by the failure and negligence of the defendant, as aforesaid, in negligently and carelessly failing to impart to or give notice, to the plaintiff, of the dangerous and treacherous nature of said speeder when operated upon a railroad track, as aforesaid."

There is no allegation in the complaint that the speeder was in any manner different from others of its class. On the contrary, from the facts alleged in the complaint, it must be assumed that it had all the virtues and all the faults of speeders in general. Or, as it is said in the majority opinion: "There is no allegation in the complaint that

there was any specific defect in the machine; it is not claimed that any part of it was worn, broken, or in any respect defective; the contention is simply that the entire machine,' though all its parts were sound and in functioning condition, was, nevertheless, a dangerous instrumentality when operated upon railroad tracks."

The plaintiff had undertaken to repair the engine and he asked permission to operate the speeder on the tracks for the purpose of "trying out and testing" the engine. There is no contention that .the plaintiff at the time he asked such permission in any manner intimated that he was not familiar with the operation of speeders or their general characteristics while being operated on a railroad track.

In my opinion the averments in the complaint do not show that the defendant breached any legal duty which it owed to the plaintiff. In other words, I am of the opinion that the complaint does not state facts sufficient to constitute a cause of action.